PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| DONALD K. BASS, | ) | |
| | ) | CASE NO.  1:09CV2516 |
| Plaintiff, | ) | |
| | ) | JUDGE BENITA Y. PEARSON |
| v. | ) | |
| | ) | |
| WHITE CASTLE SYSTEM, INC., | ) | **MEMORANDUM OF OPINION** |
| | ) | **AND ORDER** |
| Defendant. | ) | [Resolving ECF No.s 62 and 63] |

Pro se Plaintiff Donald K. Bass, a Black male born in 1953, brought this action against Defendant White Castle System, Inc. alleging various employment discrimination claims.  These claims are now before the Court upon cross-motions for summary judgment (ECF Nos. 62 and 63).  Defendant argues Plaintiff's claims for race, sex, and age discrimination and retaliation under Title VII of the Civil Rights Act of 1964 ("Title VII") and the Age Discrimination in Employment Act ("ADEA") are without merit, and summary judgment should be granted to White Castle.  In the alternative, Defendant contends it is entitled to partial summary judgment as to all potential damages after March 9, 2010.  The Court has been advised, having reviewed the record, the parties' briefs, and the applicable law.  For the reasons provided below, Defendant's motion is granted and Plaintiff's motion is denied.

## I. Background

Plaintiff was a full-time management-level employee of Defendant.  He was hired in January 2000 as a Team Member.  Plaintiff was promoted to Shift Manager on May 7, 2000,

(1:09CV2516)

Assistant General Manager on January 20, 2002, and General Manager on February 17, 2002.

The last position that he held was Assistant General Manager.  ECF No. 63-2 at PageID #: 763, ¶

3.  His employment was terminated the first time on January 20, 2010.  ECF No. 60-36.  After

being reinstated on February 14, 2010, Plaintiff was terminated three weeks later—on March 9,

2010—for job abandonment.  Exhibit H to Affidavit of Catherine L. Adams (ECF No. 62-4) at

PageID #: 712.

Plaintiff challenges the following five employment actions of Defendant:

1.  Plaintiff's June 2008 Suspension for a No Call/No Show[1]—Plaintiff claims
that he was discriminated against on the basis of age and sex and in retaliation for
filing charges of discrimination when he was issued a three-day suspension on
June 17, 2008 (ECF No. 62-3 at PageID #: 695) by his then-General Manager,
Tarri Oates, for failing to report to work and not calling in because Brandi Black,
a Black female employee, who was 18 years old, was not disciplined.  *See*
Amended Complaint for Damages and Relief (ECF No. 24) at PageID #: 144.

2.  Plaintiff's November 18, 2008 Suspension for Excessive Tardiness—Plaintiff
claims that he was discriminated against on the basis of race and sex and in
retaliation for filing charges of discrimination when he was issued a five-day
suspension for excessive tardiness in November 2008 (ECF No. 62-1 at PageID #:
641) because Jenny Kuchinski, a White female Assistant General Manager, was
tardy nearly as many days as Plaintiff, but was only issued a written reprimand.
ECF No. 24 at PageID #: 145.

3.  Plaintiff's November and early December 2009 Discipline for Attendance and
Cash Handling and Bank Deposit Procedure Violations—Plaintiff challenges his
receipt of several different disciplinary actions in a short period of time as
discriminatory on the basis of race, sex, and age and in retaliation for filing
charges of discrimination.  *See* ECF No. 62-2 at PageID #: 680-82; 683; 684; and
685.  ECF No. 24 at PageID #: 146.  Plaintiff believes that his General Manager,
Tameka Fredericy, took these actions in retaliation for Plaintiff reporting her for

---

[1]  A no call/no show is when an employee does not report for his scheduled shift
and does not call to report his absence.  Affidavit of Lydia Dowler (ECF No. 62-1) at
PageID #: 630, ¶ 6.

(1:09CV2516)

conducting personal business on Company time and because she held a grudge against him.  ECF No. 24 at PageID #: 146; ECF No. 66 at PageID #: 776; ECF No. 60-28; Plaintiff's Deposition ECF No. 60 at PageID #: 393-94, Pgs. 347-50 and ECF No. 61 at PageID #: 494-96, Pgs. 503-511;[2] ECF No. 62-1 at PageID #: 631, ¶ 8.[3]

4.  Plaintiff's January 2010 Suspensions for an Unexcused Absence and for Falsifying a Doctor's Excuse—Plaintiff challenges two suspensions issued in January 2010, one for three days for an unexcused absence on January 6, 2010 for what was reported to his manager as car trouble (ECF No. 62-2 at PageID #: 688) and one for submitting a doctor's excuse from Dr. Sara Stout with an altered return to work date (ECF No. 62-1 at PageID #: 663).  Plaintiff alleges that these suspensions are discriminatory on the basis of age, sex, and race and in retaliation for filing charges of discrimination.  ECF No. 24 at PageID #: 147.

5.  Plaintiff's Termination for Falsifying a Doctor's Excuse—Plaintiff challenges his eventual termination for the altered doctor's excuse as discriminatory on the basis of race and age and in retaliation for his filing charges of discrimination. ECF No. 24 at PageID #: 148.

Plaintiff agreed to obtain documentation that a nurse made the change to the doctor's excuse by January 18, 2010 and provide it to Ms. Dowler,[4] but Plaintiff never did so.  ECF No. 60 at PageID #: 405-406, Pgs. 397-98 ; ECF No. 61 at PageID #: 475, Pg. 428.  In fact, he never contacted Defendant or Ms. Dowler at all.  ECF No. 61 at PageID #: 476, Pgs. 430-31.  After his

---

[2]  Volume I of the transcript of Plaintiff's deposition must be read together with the Errata Sheet (ECF No. 60 at PageID #: 409-12) because the content of the deposition was substantially altered by the Errata Sheet.  See ECF No. 62 at PageID #: 599 n. 3.

[3]  Plaintiff's attempt to bring forward evidence of differing treatment by Defendant of Ms. Fredericy and Plaintiff when they were both Assistant General Managers, see ECF No. 66 at PageID #: 775, 777, and 784, is outside the scope of the Amended Complaint (ECF No. 24) for the reasons set forth by White Castle.  ECF No. 67 at PageID #: 863-64.

[4]  She was the Regional Assistant Director of Operations for the Columbus and Cleveland Regional Offices with supervision over the Castle restaurant in which Plaintiff worked.  ECF No. 62-1 at PageID #: 628, ¶ 2.

(1:09CV2516)

termination, Plaintiff's doctor sent a letter to Defendant explaining that the nurse had made the change to the date in the doctor's excuse.  ECF No. 62-4 at PageID #: 708.  *See also* ECF No. 62-4 at PageID #: 702, ¶ 9.  In response, White Castle telephoned Plaintiff (ECF No. 61 at PageID #: 476, Pg. 433; ECF No. 62-1 at PageID #: 636, ¶ 23) and sent two letters to his address on file (ECF No. 62-4 at PageID #: 709-10) to inform Plaintiff that he was reinstated and instructing him to contact his Castle restaurant for his schedule.  ECF No. 62-4 at PageID #: 703, ¶¶ 13-14.  Plaintiff never contacted Defendant, and after three weeks, White Castle terminated him for job abandonment.

## II.  Standard of Review

Summary judgment is appropriately granted when the pleadings, the discovery and disclosure materials on file, and any affidavits show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Johnson v. Karnes*, 398 F.3d 868, 873 (6th Cir. 2005).  The moving party is not required to file affidavits or other similar materials negating a claim on which its opponent bears the burden of proof, so long as the movant relies upon the absence of the essential element in the pleadings, depositions, answers to interrogatories, and admissions on file.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The moving party must "show that the non-moving party has failed to establish an essential element of his case upon which he would bear the ultimate burden of proof at trial."  *Guarino v. Brookfield Twp. Trustees.*, 980 F.2d 399, 403 (6th Cir. 1992).

Once the movant makes a properly supported motion, the burden shifts to the non-moving party to demonstrate the existence of a genuine dispute.  An opposing party may not simply rely

4

(1:09CV2516)

on its pleadings; rather, it must "produce evidence that results in a conflict of material fact to be resolved by a jury." *Cox v. Ky. Dep't. of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995).  The non-moving party must, to defeat the motion, "show that there is doubt as to the material facts and that the record, taken as a whole, does not lead to a judgment for the movant." *Guarino*, 980 F.2d at 403.  In reviewing a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party when deciding whether a genuine issue of material fact exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970).

The United States Supreme Court, in deciding *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986), stated that in order for a motion for summary judgment to be granted, there must be no genuine issue of material fact. *Id.* at 248.  A fact is "material" only if its resolution will affect the outcome of the lawsuit.  In determining whether a factual issue is "genuine," the court must decide whether the evidence is such that reasonable jurors could find that the non-moving party is entitled to a verdict. *Id.*  Summary judgment "will not lie . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*  To withstand summary judgment, the non-movant must show sufficient evidence to create a genuine issue of material fact. *Klepper v. First Am. Bank*, 916 F.2d 337, 342 (6th Cir. 1990).  The existence of a mere scintilla of evidence in support of the non-moving party's position ordinarily will not be sufficient to defeat a motion for summary judgment. *Id.*

5

(1:09CV2516)

### III.  Analysis

**A.  Plaintiff Cannot Prevail on His Claims for Race, Sex, or Age Discrimination**

Because Plaintiff offers only circumstantial evidence of discrimination, the familiar *McDonnell Douglas* burden-shifting framework[5] governs Plaintiff's federal claims of race and sex discrimination under Title VII.  *See Wright v. Murray Guard, Inc.*, 455 F.3d 702, 706-07 (6th Cir. 2006) (applying the burden-shifting framework to Title VII race- and sex-discrimination claims).

Plaintiff has the burden of establishing a *prima facie* case of discrimination under the burden-shifting framework.  *Id.* at 707.  To do so, he must show that (1) he is a member of a protected class, (2) he suffered an adverse employment action, (3) he was qualified for the position, and (4) he was replaced by someone outside the protected class or treated differently from similarly situated, non-protected employees.  *Id.*

Under the *McDonnell Douglas* burden-shifting framework that governs age-discrimination claims under the ADEA, *Geiger v. Tower Automotive*, 579 F.3d 614, 622 (6th Cir. 2009), the requirement that a plaintiff establish a *prima facie* case of age discrimination is not intended to be an onerous one.  *Cline v. Catholic Diocese of Toledo*, 206 F.3d 651, 660 (6th Cir. 2000) (characterizing the *prima facie* requirement as "not onerous").  Once a plaintiff has established a *prima facie* case of age discrimination, the burden shifts to the defendant employer to come forward with a legitimate, nondiscriminatory reason for the adverse employment action.

---

[5] *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973), and later clarified by *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981).

6

(1:09CV2516)

*Geiger*, 579 F.3d at 626.  The plaintiff then bears the burden of demonstrating that the proffered

reason was in fact a pretext designed to conceal unlawful discrimination.  Pretext can be shown

by offering evidence that (1) the employer's stated reason had no basis in fact, (2) the stated

reason did not actually motivate the employer, or (3) the stated reason was insufficient to warrant

the adverse employment action.  *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 576 (6th

Cir. 2003) (en banc).  Of course, the ultimate burden of persuasion to show that Defendant

intentionally discriminated against Plaintiff on the basis of race, sex, or age always rests with the

plaintiff.  *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 507 (1993).

For many of Plaintiff's claims, the primary dispute is with regard to his claim that he was

treated less favorably than similarly situated individuals outside the protected class—either as it

relates to the final element of his *prima facie* case or as it relates to his burden to demonstrate

that the actions were a pretextual for discrimination.

An employee must be similar in all relevant respects without any mitigating or

differentiating circumstances to be similarly situated for purposes of establishing a *prima facie*

case or pretext.  In order to show that an employee is similarly situated, Plaintiff must provide

facts establishing that the similarly-situated comparator "dealt with the same supervisor, [had]

been subject to the same standards and [had] engaged in the same conduct without such

differentiating or mitigating circumstances that would distinguish their conduct or the employer's

treatment of them for it." *Russell v. Univ. of Toledo*, 537 F.3d 596, 607 (6th Cir. 2008) (quoting

*Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998)).

7

(1:09CV2516)

With regard to Plaintiff's sex discrimination claims, however, as a male, in order to show that he is a member of a protected class, he must show that White Castle is the unusual employer that discriminates against men.  *Becker v. Elmwood Local School Dist.*, 519 Fed.Appx. 339, 342 (6th Cir. 2013); *Wilson v. Ohio*, 178 Fed.Appx. 457, 465 (6th Cir. 2006).  Plaintiff has no evidence to suggest that Defendant is such an employer.

> **1.  Plaintiff Cannot Establish That His June 2008 Suspension for Failing to Report to Work Was Discriminatory on the Basis of Age or Sex.**

Plaintiff claims that he was discriminated against on the basis of age and sex and in retaliation for filing charges of discrimination when he was issued a three-day suspension on June 17, 2008 (ECF No. 62-3 at PageID #: 695) by his then General Manager, Tarri Oates, for failing to report to work and not calling in because Brandi Black, a Black female Team Member, who was 18 years old, was not disciplined.

Plaintiff does not dispute the underlying policy violation or that it was Defendant's policy to suspend employees for a no call/no show.  ECF No. 61 at PageID #: 485, Pgs. 467-68; White Castle's Attendance and Punctuality Policy (ECF No. 60-14) in the White Castle Restaurant Division Team Member Handbook.

The undisputed facts establish that Ms. Oates also suspended Ms. Black for her no call/no show pursuant to the attendance policy for one day on her next scheduled work day after her no call/no show was discovered.  *See* Exhibit D to Affidavit of Tarri Oates (ECF No. 62-3 at PageID #: 698).  Ms. Oates did not issue Ms. Black a three or five-day suspension because of her reduced schedule.  Doing so would have resulted in Ms. Black not working for three months.  ECF No. 62-3 at PageID #: 692, ¶ 5.

8

(1:09CV2516)

The Court finds Ms. Black is not similarly situated to Plaintiff because she was a part-time Team Member working only one day per month at the time, and Plaintiff (then an Assistant General Manager), was a full-time member of management.  ECF No. 62-3 at PageID #: 691-92,  ¶¶ 4, 5.  *See also* ECF No. 61 at PageID #: 485, Pgs. 468-69.

The undisputed facts demonstrate that Plaintiff's June 2008 suspension was the result of his no call/no show and the application of a neutral attendance policy.  Plaintiff even acknowledges that Defendant suspended another employee, Deandre Caldwell, a Black male employee who was 20 years old at the time, for three days for a no call/no show in July 2008.  ECF No. 24 at PageID #: 144.  *See also* ECF No. 62-3 at PageID #: 692, ¶ 6 and 699.  Mr. Caldwell's suspension negates Plaintiff's contention that the June 2008 suspension decision had anything to do with age.  Plaintiff cannot demonstrate a *prima facie* case of age or sex discrimination because he cannot show that a similarly situated employee under age 40 or a female employee was treated more favorably and likewise, cannot show that there is a genuine issue of material fact as to whether Defendant's decision was a pretext for prohibited discrimination.

> **2.      Plaintiff Cannot Establish that His November 2008 Suspension for Attendance Was Discriminatory on the Basis of Race or Sex.**

Plaintiff claims that he was discriminated against on the basis of race and sex and in retaliation for filing charges of discrimination when he was issued a five-day suspension for excessive tardiness on November 18, 2008 because Jenny Kuchinski, a White female Assistant General Manager, was tardy nearly as many days as Plaintiff, but was only issued a written reprimand.

9

(1:09CV2516)

When Ms. Dowler discovered that the management of Plaintiff's Castle restaurant were not properly enforcing the attendance policy, she examined the attendance records of the employees at that restaurant and discovered that 11 employees, including Plaintiff, should have been disciplined for attendance and tardiness under Defendant's attendance policy because they had at least three late arrivals or one unexcused absence within six months of their last attendance discipline. ECF No. 62-1 at PageID #: 629-30, ¶¶ 5-6. *See also* ECF No. 61 at Page ID # 488, Pg. 481; Page ID # 489-90, Pgs. 484-486, 488. Ms. Dowler elected to impose the next level of progressive discipline for each of those employees, regardless of the total number of violations: for Plaintiff, a five-day suspension because he had at least three late arrivals since his June 2008 three-day suspension for a no call/no show (ECF No. 62-1 at PageID #: 641); and for Ms. Kuchinski, a written reprimand because Ms. Kuchinski had at least three late arrivals since her verbal warning (ECF No. 62-1 at PageID #: 639). ECF No. 62-1 at PageID #: 630, ¶ 6.

The facts demonstrate that Ms. Kuchinski is not similarly situated because her prior discipline was a verbal warning, whereas Plaintiff was suspended five months earlier for a no call/no show, another attendance-related infraction. ECF No. 62-1 at PageID #: 630, ¶ 6. Plaintiff was one of five employees that were suspended by Defendant for attendance problems at the Castle restaurant where Plaintiff worked. ECF No. 62-1 at PageID #: 629, ¶ 5.

There is no evidence of a discriminatory motive by Ms. Oates or Ms. Dowler, no evidence of pretext, and no evidence that a similarly situated White or female employee was treated more favorably, and Plaintiff's claim fails as a matter of law. *See Russell*, 537 F.3d at

(1:09CV2516)

607 (employees must be similarly situated in all respects without any mitigating or differentiating

circumstances).

> **3.** **The Discipline Issued in November and Early December 2009 was Appropriately Issued, and Plaintiff Cannot Establish That it Was the Result of Race, Sex, or Age Discrimination.**

Plaintiff challenges his receipt of several different disciplinary actions in a short period of

time as discriminatory on the basis of race, sex, and age and in retaliation for filing charges of

discrimination.  On November 15, 2009, Ms. Frederic suspended him for three days for

continuing to mislabel bank deposits and for combining two deposits.  Tameka Frederic

Affidavit (ECF No. 62-2 at PageID #: 668, ¶ 6 and 680-82.  Plaintiff informed Ms. Frederic

after receiving the suspension that he took medication that he believed caused blurred vision and

affected his handling of bank deposits, but Ms. Frederic did not believe that this explained the

violations.  She attributed the errors to Plaintiff's refusal to follow Defendant's policies, which

were persistent problems for Plaintiff throughout his career at White Castle.  ECF No. 62-2 at

PageID #: 668, ¶ 7.  Plaintiff argues that if the envelope does not make it to the bank, it cannot be

a banking error.  ECF No. 66 at PageID #: 776.  He acknowledges, however, that he "ha[d] a

different, unorthodox way of doing things" and did not always follow White Castle procedures.

ECF No. 60 at PageID #: 376, Pg. 281.

On November 20, 2009, Ms. Frederic issued Plaintiff a written reprimand for tardiness

and attendance issues because Plaintiff had three additional late arrivals on October 21 and

November 9 and 11, 2009 since his prior verbal warning.  ECF No. 62-2 at PageID #: 668, ¶ 8

11

(1:09CV2516)

and 683.  Ms. Fredericy also issued two minute reports[6] to Plaintiff:  one dated November 20, 2009 documenting Plaintiff's unnecessarily adding labor to the weekly schedule and another dated November 21, 2009 documenting Plaintiff's failure to count inventory.  ECF No. 62-2 at PageID #: 668, ¶ 9 and 684.  The November 15, 2009 suspension, the November 20, 2009 written reprimand for tardiness and attendance, and the two minute reports were all given to Plaintiff on November 21, 2009.  ECF No. 61 at PageID #: 493-94, Pgs. 500-503.

After Plaintiff accumulated a cash discrepancy of $15.11, Ms. Fredericy issued a verbal warning to him on December 4, 2009.  ECF No. 62-2 at PageID #: 668, ¶10 and 685.  White Castle's Cash Handling Policy requires a verbal warning for the first instance of a cash discrepancy (or shortage) greater than $10.00 but less than $20.00, reviewed on a rolling six month basis.  ECF No. 62-2 at PageID #: 668-69, ¶10 and 686.[7]  The Court finds the policy is explicit about the monetary amount of the shortage and the level of discipline, and Ms. Fredericy's discipline of Plaintiff was in accordance with that policy.

With the exception of the November 15, 2009 three-day suspension for banking errors, these are not materially adverse employment actions under Title VII.  See Zanders v. Potter, 223 Fed. Appx. 470, 470-71 (6th Cir. 2007) (letter of warning did not constitute adverse action where

---

[6]  Minute reports are used by White Castle managers to document events that occur in the daily business of the restaurant, which can include policy violations.  ECF No. 62-2 at PageID #: 668, ¶ 9.

[7]  Ms. Dowler's investigation of the November 15, 2009 suspension, the November 20, 2009 written reprimand, the minute reports on November 20 and 21, 2009, and the December 4, 2009 verbal warning revealed that the discipline was appropriately issued.  ECF No. 62-1 at PageID #: 632, ¶ 10.

(1:09CV2516)

plaintiff did not suffer loss of position, salary, benefits, or prestige).  Furthermore, Plaintiff

cannot point to a similarly situated employee outside of the protected class who was treated more

favorably.  Thus, Plaintiff cannot set forth even a *prima facie* case.

Assuming *arguendo* that Plaintiff can establish a *prima facie* case, he has no evidence of

pretext.

Plaintiff's sole basis for disputing the reasons for and the underlying facts behind the

suspension for banking errors and the written reprimand for attendance is that he does not

remember.  ECF No. 60 at PageID #: 384-86, Pgs. 313-19; PageID #: 392, Pgs. 344-45.  Plaintiff

testified:  "I don't remember. . . .  So *I might as well* dispute it" in response to questioning about

this discipline.  ECF No. 60 at PageID #: 384, Pg. 313 (emphasis added).  As for the two minute

reports and the cash discrepancy, he testified that he "may have committed one [of the rule

violations]" and not the others but does not remember which ones he did not commit.  ECF No.

61 at PageID #: 495, Pg. 507.  Plaintiff cannot defeat summary judgment merely by alleging that

he cannot recall events and discipline that explain the basis for the actions Defendant took.  *See,*

*e.g.*, *Diaz v. Mitchell's Salon & Day Spa, Inc.*, No. 1:09-cv-882-HJW, 2011 WL 379097, at *6 n.

9, *9 (S.D. Ohio Feb. 2, 2011)* (granting summary judgment on all claims, noting that

"Defendant points out that plaintiff's self-serving inability to 'recall' certain documents or events

does not by itself create any 'genuine dispute' as to any material facts").

Because Plaintiff has no evidence of discriminatory motive, pretext, or a similarly

situated employee who was treated more favorably with regard to any of the discipline issued in

November and early December 2009, his race, sex, and age discrimination claims must fail as a

(1:09CV2516)

matter of law.  *Bush v. American Honda Motor Co., Inc.*, 227 F. Supp.2d 780, 797 (S.D. Ohio 2002) ("[C]ourts do not sit as super personnel departments to second guess an employer's facially legitimate business decisions").

> **4.      Plaintiff Cannot Establish that His January 2010 Suspensions Were Discriminatory on the Basis of Age, Sex, or Race.**

Next, Plaintiff challenges two suspensions issued in January 2010, one for three days for an unexcused absence on January 6, 2010 for what was reported to his manager as car trouble (ECF No. 62-2 at PageID #: 688) and one for submitting a doctor's excuse from Dr. Sara Stout with an altered return to work date (ECF No. 62-1 at PageID #: 663).  Plaintiff alleges that these suspensions are discriminatory on the basis of age, sex, and race and in retaliation for filing charges of discrimination.

Plaintiff lacks any evidence of pretext and has no evidence to show that the legitimate nondiscriminatory reasons for these actions are false, not the real reasons, or that a similarly situated employee outside the protected class was treated differently.  *See Russell*, 537 F.3d at 604.

On December 29, 2009, Plaintiff was injured during a robbery at his second job.  ECF No. 66 at PageID #: 778 and 786; ECF No. 61 at PageID #: 479, Pgs. 444-45.  Plaintiff now asserts that he had a doctor's excuse for January 6, 2010 (ECF No. 60-34) and that Ms. Fredericy acted improperly in not accepting that doctor's excuse when he returned to work on January 8, 2010.  ECF No. 60 at PageID #: 404, Pgs. 391-93.  The suspension, however, was issued before Plaintiff presented the doctor's excuse covering the January 6, 2010 absence at a time when Ms. Fredericy reasonably believed that Plaintiff's absence was due to car trouble, as told to her by

14

(1:09CV2516)

Robert Crockett, an Assistant General Manager, and as recorded in the work log.  ECF No. 62-2 at PageID #: 669-70, ¶¶ 13-14 and 687.  Car trouble is not an excused reason for an absence under Defendant's Attendance and Punctuality Policy (ECF No. 60-14).

There is no evidence that the legitimate, nondiscriminatory reason for Plaintiff's suspension for his absence on January 6, 2010—that Ms. Frederiky reasonably believed that his absence was unexcused—is false or not the true reason for the action.  There also is no evidence that Plaintiff was treated differently from a similarly situated employee outside his protected classes.

As for the second investigatory suspension issued by Ms. Dowler after Plaintiff presented the altered doctor's excuse and claimed that a nurse made the change, Ms. Dowler believed that the doctor's excuse was possibly fraudulent and suspended him pending investigation, consistent with Defendant's neutral practice of suspending employees pending investigation of possible fraud.  ECF No. 62-1 at PageID #: 634, ¶ 17.  It is undisputed that the return to work date on the doctor's excuse was altered.  ECF No. 60-35.  It is also undisputed that the doctor's office initially stated that the doctor did not make the alteration.  ECF No. 60-35 at PageID #: 467 ("Someone else made that change. . . ."); ECF No. 62-4 at PageID #: 701, ¶ 6 ("Someone else must have tampered with that record").

Employers do not have to be correct about their suspicions of employee wrongdoing; they must only have an honest belief and make a reasonably informed and considered decision based on the then-available information.  In *Braithwaite v. Timken Co.*, 258 F.3d 488 (6th Cir. 2001),

15

(1:09CV2516)

the Court of Appeals for the Sixth Circuit explained the essential inquiry related to the honest belief rule:

> "In deciding whether an employer reasonably relied on the particularized facts then before it, we do not require that the decisional process used by the employer be optimal or that it left no stone unturned.  Rather, the key inquiry is whether the employer made a reasonably informed and considered decision before taking an adverse employment action."
>
> If there is no material dispute that the employer made a ''reasonably informed and considered decision'' that demonstrates an ''honest belief'' in the proffered reason for the adverse employment action, the case should be dismissed since no reasonable juror could find that the employer's adverse employment action was pretextual.

*Id.* at 494 (internal citation omitted; quoting *Smith v. Chrysler Corp.*, 155 F.3d 799, 807 (6th Cir. 1998).  Thus, like the earlier three-day disciplinary suspension issued by Ms. Fredericy, there is absolutely no evidence of pretext or a discriminatory motive for the investigatory suspension given to Plaintiff for submitting the altered doctor's excuse.  Therefore, Plaintiff's claims for age, sex, and race discrimination based on these two suspensions must fail.

**5.      Plaintiff's Termination Was Not the Result of Race or Age Discrimination.**

Plaintiff challenges his eventual termination for the altered doctor's excuse as discriminatory on the basis of race and age and in retaliation for his filing charges of discrimination.  This claim fails as a matter of law as well because Plaintiff has no evidence of discriminatory motive or pretext.  Moreover, Plaintiff does not dispute that he failed to timely provide the requested documentation that a nurse made the change to the doctor's excuse and failed to otherwise contact Defendant or Ms. Dowler.  ECF No. 60 at PageID #: 405-406, Pgs. 397-98 ; ECF No. 61 at PageID #: 475, Pg. 428 and 476, Pgs. 430-31.

16

(1:09CV2516)

Plaintiff can point to no similarly situated employee who was not terminated under these circumstances.  ECF No. 61 at PageID #: 481, Pgs. 452-53.  As in his claim with regard to his investigatory suspension, Plaintiff has no evidence of discriminatory motive or pretext, and his claims for race and age discrimination fail as a matter of law.[8]

**B.  Harassment**

Although Plaintiff complains in his Memorandum in Opposition (ECF No. 66 at PageID #: 776, 781-83, 785, and 791) about "harassment," the only acts that he complains about are discrete events—verbal warnings, minute reports, written warnings, and suspensions—that do not support a claim for harassment.  The only actions Plaintiff cites in support of his claims are the acts of discipline he received from Ms. Fredericy for his alleged rule violations.  Under established United States Supreme Court precedent, while these can be challenged individually as potentially discriminatory adverse actions, such discrete acts cannot be strung together to demonstrate a claim for a hostile work environment.  *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114-15 (2002).

---

[8]  Plaintiff argues that his termination was discriminatory because the Ohio Department of Job and Family Services ("ODJFS") found that White Castle failed to establish just cause—"just cause" being the standard set forth in Ohio's unemployment compensation statute, Rev. Code § 4141.29(D)(2)(a).  *See* ECF No. 66 at PageID #: 779-81, 785, 787-88, 790; ECF No. 66-7 at PageID #: 845-46.  The Court agrees with Defendant that a finding made in an Ohio unemployment compensation proceeding is not entitled to preclusive effect.  Furthermore, it is not admissible in the case at bar because it is irrelevant.  *See* ECF No. 67 at PageID #: 860-62.

(1:09CV2516)

**C.  Plaintiff Cannot Prevail on His Retaliation Claims.**

Plaintiff also claims that Defendant's actions constituted unlawful retaliation in violation of Title VII and the ADEA.  Title VII prohibits an employer from discriminating against an employee because the employee "has opposed any practice made an unlawful employment practice by [Title VII], or because [the employee] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]."  42 U.S.C. § 2000e-3(a).  Similarly, the ADEA prohibits discrimination against an employee in retaliation for "oppos [ing] any practice made unlawful by this section, or because such individual, member or applicant for membership has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or litigation under this chapter."  29 U.S.C. § 623(d).

Both Title VII and ADEA retaliation claims are analyzed under the *McDonnell Douglas* framework, when such claims are supported by circumstantial evidence.  *See Spengler v. Worthington Cylinders*, 615 F.3d 481, 491 (6th Cir. 2010).  Under this framework, a plaintiff may establish a *prima facie* case of illegal retaliation by showing that "(1) [ ]he engaged in [protected activity]; (2) this exercise of protected rights was known to defendant; (3) defendant thereafter took adverse employment action against the plaintiff, or the plaintiff was subjected to severe or pervasive retaliatory harassment by a supervisor; and (4) there was a causal connection between the protected activity and the adverse employment action or harassment."  *Morris v. Oldham Cnty. Fiscal Court*, 201 F.3d 784, 792 (6th Cir. 2000) (emphasis removed).

18

(1:09CV2516)

If the plaintiff can make this showing, then "the burden of production of evidence shifts to the employer to 'articulate some legitimate, nondiscriminatory reason' for its actions." *Canitia v. Yellow Freight Sys., Inc.*, 903 F.2d 1064, 1066 (6th Cir. 1990) (quoting *McDonnell Douglas Corp.*, 411 U.S. at 802.  If the employer can articulate such a reason, then the plaintiff is required to "demonstrate by a preponderance of the evidence that the proffered reason was a mere pretext for discrimination." *Abbott v. Crown Motor Co., Inc.*, 348 F.3d 537, 542 (6th Cir. 2003).  The burden of showing intentional discrimination in a Title VII retaliation case remains with the plaintiff at all times. *Wrenn v. Gould*, 808 F.2d 493, 500 (6th Cir. 1987). *See also Geiger*, 579 F.3d at 622 (Title VII framework applies to claims under the ADEA).

That Plaintiff filed several charges with both the Ohio Civil Rights Commission ("OCRC") and the U.S. Equal Employment Opportunity Commission ("EEOC") and that White Castle was aware of his protected activity is not in dispute.  Defendant, however, is entitled to summary judgment for the reason that Plaintiff cannot establish a *prima facie* case of retaliation because he has no evidence of causation—that the adverse actions were taken because of his protected activity—other than temporal proximity.  Temporal proximity is insufficient in and of itself to establish causation. *See Nguyen v. City of Cleveland*, 229 F.3d 559, 567 (6th Cir.2000) (refusing to find that temporal proximity was sufficient in itself to establish a causal connection).

Furthermore, as discussed above with regard to each of the alleged adverse actions, there is absolutely no evidence of pretext.  The employees that Plaintiff alleges are similarly situated are not similarly situated to him in all relevant respects.  There is no evidence that the proffered reasons for the actions are false or that they are not the real reasons for the actions.  Furthermore,

19

(1:09CV2516)

there is no anecdotal evidence suggesting a retaliatory motive.  Thus, Plaintiff's retaliation claims for all of the challenged adverse actions fail as a matter of law.

**D.  Damages after March 9, 2010**

Even assuming that Plaintiff can establish a genuine issue of material fact as to his discrimination or retaliation claims, his potential damages are limited for two reasons.  First, Defendant made an unconditional offer of reinstatement that Plaintiff failed to accept, and thus, he cannot recover for any damages after that offer of reinstatement lapsed.  Second,  Plaintiff's failure to contact Defendant after his reinstatement is a voluntary termination for job abandonment, which cuts off his damages as of March 9, 2010, his termination date.

Under the Supreme Court's decision in *Ford Motor Co. v. E.E.O.C.*, 458 U.S. 219, 232-34 (1982), an unconditional offer of reinstatement that is rejected ends the accrual of damages.  This is true even if the offer of reinstatement is ignored or allowed to expire, and damages are cut off after the date the offer expired.  *See, e.g.*, *Albert v. Smith's Food & Drug Ctrs., Inc.*, 356 F.3d 1242, 1254 (10th Cir. 2004) (*Ford Motor* applies even where the employee attempted to accept the offer of reinstatement one day after it expired and was never reinstated). *See also* *Lightfoot v. Union Carbide Corp.*, No. 92 Civ. 6411 (RPP), 1994 WL 184670, at *4 (S.D.N.Y. May 12, 1994) (finding offer of reinstatement was unconditional and served to cut off employer's backpay liability).  In this case, at a minimum, Plaintiff's damages are cut off as of March 9, 2010 when the offer was deemed no longer open, and Plaintiff was terminated.  *See* ECF No. 62-4 at PageID #: 712.

20

(1:09CV2516)

Viewing the facts another way, Plaintiff was reinstated on February 14, 2010 and then failed to report to work for three consecutive weeks.  His subsequent action in failing to report for work and thus abandoning his position cuts off his damages after March 9, 2010 because his job abandonment presents independent grounds for termination after his January 20, 2010 termination.  *Cf. McKennon v. Nashville Banner Publ'g Co.*, 513 U.S. 352, 361-363 (1995) (holding that after-acquired evidence doctrine provides an independent ground for termination and cuts off back pay and front pay).

### IV.  Conclusion

Viewing Plaintiff's probative evidence and all reasonable inferences drawn therefrom in the light most favorable to Plaintiff,

Plaintiff's Motion for Summary Judgment (ECF No. 63) is denied; and

Defendant's Motion for Summary Judgment (ECF No. 62) is granted.


IT IS SO ORDERED.


 October 31, 2014                                   /s/ Benita Y. Pearson
Date                                               Benita Y. Pearson
                                                   United States District Judge

21